UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 18-10264-RGS |
| | ) | |
| JORGE MONTEIRO, a/k/a Jay," | ) | |
| Defendant. | ) | |

SENTENCING MEMORANDUM OF THE UNITED STATES

On December 11, 2018, the defendant, JORGE MONTEIRO a/k/a "Jay," pled guilty to the Indictment, which charged him with distributing fentanyl, in violation of 21 U.S.C. § 841(a)(1). The defendant's sentencing hearing is scheduled for March 27, 2019. For the reasons presented herein, in the PSR, and to be presented at the sentencing hearing, the government requests principally a sentence of 57 months' imprisonment, which is within the advisory guidelines range. The government requests this sentence because MONTEIRO sold wholesale quantities of fentanyl, a deadly drug, and because he possessed a firearm, as well as his troubling criminal history.

**I. BACKGROUND AND THE OFFENSE**

This case arose from Operation Landshark, which was an FBI investigation targeting impact players and repeat offenders in Brockton and Boston. Law enforcement anticipated that removal of these defendants, who were household names to police, informants, and the community, from the streets of Brockton and Boston would result in a significant reduction of the rate of crime, especially shootings and acts of violence. PSR ¶ 7.

JORGE MONTEIRO was one such target. Law enforcement classifies MONTEIRO as at least an associate of the Perkins Avenue street gang in Brockton. MONTEIRO was well known to law enforcement due to his involvement in several cases as a juvenile, which resulted

in dismissals. PSR ¶¶ 53-56. As an adult, MONTEIRO engaged in drug dealing and gun possession, in concert with another associate of the Perkins Avenue gang. PSR ¶¶ 46-47. And MONTEIRO was squarely on law enforcement's radar as a result of a violent car chase and gun fight that took place in the streets of Brockton and West Bridgewater, which resulted in pending charges of attempted assault & battery by discharge of a firearm, armed assault with intent to murder, and unlawful possession of a firearm and ammunition. PSR ¶¶ 52.[1]

The offense here was MONTEIRO's sale of fentanyl to an FBI cooperating witness on June 15, 2018. That sale took place while MONTEIRO was on pretrial release from Plymouth Superior Court. Id. The deal was originally for thirty grams, which is a wholesale, not street level, weight. PSR ¶ 13. The sale took place at the corner of Shephard Street and Shepard Avenue in Brockton, which is approximately .1 mile from the home where MONTEIRO lived with his family.[2] PSR ¶ 72. At the time of the sale, MONTEIRO only had access to twenty grams of fentanyl. In fact, MONTEIRO delivered another ten grams to the cooperating witness four days later. PSR ¶ 17.

MONTEIRO had already demonstrated that he had access to large amounts of fentanyl and participated in a criminal organization. On June 4, 2018, in an uncharged transaction, MONTEIRO arranged the sale of thirty grams but later postponed the deal because the area was

---

[1] To be clear, these charges are only pending. The government offers them at this stage of its argument to explain to the Court why MONTEIRO became a federal target, not as a statement of criminal culpability.

[2] https://www.google.com/maps/dir/Sheppard+St+%26+Sheppard+Ave,+Brockton,+MA+02301/25+Davids+St,+Brockton,+MA+02301/@42.070358,-71.0212565,17z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x89e48524b7b8a63b:0x9da126c92c81ea10!2m2!1d-71.0186693!2d42.0697667!1m5!1m1!1s0x89e485249a30f785:0xc88a7f3fee9a6e27!2m2!1d-71.0194663!2d42.0709414!3e2.

"hot." PSR ¶ 20. Later that night, an unidentified male who the CW believed was Cape Verdean delivered the thirty grams of fentanyl. PSR ¶ 21.[3]

At MONTEIRO's arrest, law enforcement found additional evidence with indicated that MONTEIRO conducted a serious drug operation: specifically, a firearm and finger presses. On August 23, 2018, in the early morning, law enforcement was positioned to arrest MONTEIRO at his family's house and announced their presence. MONTEIRO did not come down; instead, a male threw something from the third floor apartment: a Glock 19 9mm pistol with an obliterated serial number and two metal cylindrical presses, typically used by drug dealers to press heroin or fentanyl into "fingers" for distribution (a finger is approximately ten grams). PSR ¶¶ 25-26. MONTEIRO then came down and law enforcement cleared the third floor apartment, confirming that MONTEIRO had been the only male present. PSR ¶ 27. Law enforcement later executed a search warrant for the apartment and found a magazine which fit the Glock in MONTEIRO's room. PSR ¶ 28.

## II.  GUIDELINES ANALYSIS AND CRIMINAL HISTORY

The PSR found, and the government concurs, that MONTEIRO is base offense level 24 pursuant to USSG § 2D1.1, because he was responsible for at least 57.6 grams of fentanyl. PSR ¶ 34. MONTEIRO receives a two level enhancement because he possessed a firearm. PSR ¶ 35. MONTEIRO qualifies for a three level reduction for acceptance of responsibility, yielding a total offense level of 23. PSR ¶¶ 41-43.

As discussed above, MONTEIRO is a repeat drug dealer. He has CWOFs for possession of class B and another for possession to distribute Class A and Class B along with carrying a

---

[3] The CW was familiar with MONTEIRO and, on July 1, 2018, identified him from a photo array. PSR ¶ 20. The person who delivered the drugs was not MONTEIRO, but a confederate.

dangerous weapon. PSR ¶¶ 46-47. He also has a conviction for failure to stop for police. PSR ¶ 48. Each counts as one point, yielding a total score of three points and Criminal History Category II.

At TOL 23/CHC II, MONTEIRO's advisory Guidelines Sentencing Range is 51 to 63 months.

### III.  18 U.S.C. §3553(a) FACTORS

Consideration of the §3553(a) factors demonstrates a sentence of 57 months, in the center of the Guidelines Sentencing Range, is the appropriate sentence in this case.

#### A.  The Nature of the Offense

The first, most significant fact of this crime is its object: fentanyl. As the Court is aware and is discussed below, fentantyl. MONTEIRO's drug deals – for wholesale quantities – are particularly dangerous: MONTEIRO demonstrated that he had access to a ready supplier, could turn around deals fast, had a confederate to help him, and – most significantly—was armed.

Fentanyl has moved to the center of the ongoing opiate epidemic, which continues to wreak havoc here in Massachusetts and nationally. The Drug Enforcement Administration's ("DEA") 2018 National Drug Threat Assessment found a 24.84% increase in heroin-related deaths in the Northeast from 2015 to 2016 and national 103% increase in synthetic opioid deaths.[4] There was an over 525% increase in synthetic opioid deaths from 2013 to 2016.[5] This exponential rise in synthetic opioid deaths led the DEA to state that "Synthetic opioids are now involved in more deaths than any other illicit drug," and fentanyl is by far the most prevalent

---

[4] DEA, 2018 NATIONAL DRUG THREAT ASSESMENT, at 17, 27 (2018), https://www.dea.gov/sites/default/files/2018-11/DIR-032-18%202018%20NDTA%20%5Bfinal%5D%20low%20resolution11-20.pdf.

[5] U.S. GAO REPORT. ILLICIT OPIOIDS: WHILE GREATER ATTENTION GIVEN TO COMBATTING SYNTHETIC OPIOIDS, AGENCIES NEED TO BETTER ASSESS THEIR EFFORTS, at 66 (2018). https://www.gao.gov/assets/700/691890.pdf.

synthetic opioid.[6]  Massachusetts remains one of the top ten states for fentanyl overdoses and heroin overdoses.[7]  In the 2015 National Drug Threat Survey, responders from New England reported heroin as the greatest drug threat in the area, while the New England Field Division of the Drug Enforcement Administration ranked heroin as their "number one drug threat" in 2014.[8]

Along with the ongoing heroin epidemic, the United States, and Massachusetts in particular, has recently seen an increase in the appearance of fentanyl, both in seizures of fentanyl and overdose deaths.[9]  Fentanyl is a powerful synthetic opiate that is significantly more potent than morphine and heroin.[10]  In fact, Massachusetts Attorney General Maura Healey's office estimates fentanyl to be 50 to 100 times more potent than morphine and 30 to 50 times more potent than heroin.[11]  When taken in the same dosage as heroin, fentanyl can easily cause an overdose or even death.  Some officials believe it is the main reason that the current opiate epidemic is deadlier than past experiences.[12]

A significant factor of what makes fentanyl so dangerous is its primary characteristic of being fast-acting.  Users have described not being able to move while injecting fentanyl because

---

[6] Id. at 27.
[7] Id. at 29.
[8] DEA INTELLIGENCE REPORT, NATIONAL HEROIN THREAT ASSESSMENT SUMMARY, at 2-3 (2015). https://www.dea.gov/sites/default/files/2018-07/hq052215_National_Heroin_Threat_Assessment_Summary.pdf.
[9] See Matt Rocheleau, *New Federal Data Indicates Mass. Has a Fentanyl Problem*, THE BOSTON GLOBE, October 27, 2015, https://www.bostonglobe.com/metro/2015/10/27/cdc-data-indicates-mass-has-fentanyl-problem/wLtOIwF0Jxw8VjUj4Rbp9H/story.html.
[10] NATIONAL INSTITUTE ON DRUG ABUSE, *Fentanyl*, (last updated June 2016), https://www.drugabuse.gov/drugs-abuse/fentanyl; NATIONAL INSTITUTE ON DRUG ABUSE, *Fiscal Year 2019 Budget Information – Congressional Justification for National Institute on Drug Abuse*, (last updated April 2018), https://www.drugabuse.gov/about-nida/legislative-activities/budget-information/fiscal-year-2019-budget-information-congressional-justification-national-institute-drug-abuse.
[11] Press Release, Attorney General Maura Healey, AG Healey Statement on CDC's Fentanyl Advisory (October 27, 2015) http://www.mass.gov/ago/news-and-updates/press-releases/2015/2015-10-27-cdc-fentanyl.html; See, attached Exhibit 2, a graphic from Stat comparing lethal doses of heroin and fentanyl; Allison Bond, *Why fentanyl is deadlier than heroin, in a single photo*, STAT, September 29, 2016, https://www.statnews.com/2016/09/29/why-fentanyl-is-deadlier-than-heroin/.
[12] See Douglas Moser, *Fentanyl and Heroin: a Deadly Cocktail*, NEWBURYPORT DAILY NEWS, June 15, 2015.

they can feel its effects before even finishing the full injection.[13] Its fast-acting qualities are especially hazardous, because they make it far more difficult to administer naloxone, a drug aimed at reducing the effects of an overdose, in a timely manner.[14] The executive director of Learn to Cope, a network that offers a support network to parents and family members of addicts, has said: "At least with heroin, there is a chance that if someone relapses, they can get back into recovery…but with fentanyl…it is only a matter of moments before an addict can be dead."[15]

A common issue results when buyers are seeking pure heroin and receive heroin laced with fentanyl.[16] Because fentanyl is considerably more potent than heroin, it is more likely that an overdose will occur if a user is unaware that the heroin actually contains fentanyl, as the user will not know to use a smaller quantity of the drug. Some addicts have described it as "playing Russian roulette," because it is impossible tell the difference between the two by sight.[17]

The DEA reports that in 2016 Massachusetts had the second most fentanyl exhibits submitted to forensic labs, with 6,028 samples, and the seventh most heroin samples with 9,461.[18] Governor Baker and AG Healey determined that the fentanyl problem in Massachusetts is so serious that they championed a bipartisan effort to criminalize fentanyl trafficking with

---

[13] Katharine Q. Seelye, *Heroin Epidemic Is Yielding to a Deadlier Cousin: Fentanyl,* THE NEW YORK TIMES, March 25, 2016, http://www.nytimes.com/2016/03/26/us/heroin-fentanyl html?_r=0.

[14] Id.

[15] Id.

[16] J.D. Capelouto, *Law increasing sentence for fentanyl trafficking goes into effect Tuesday*, THE BOSTON GLOBE, February 22, 2016, https://www.bostonglobe.com/metro/2016/02/22/law-increasing-sentence-for-fentanyl-trafficking-goes-into-effect-tuesday/Zbe59bwh0545I5DEj6KcaI/story html.

[17] Seelye, supra note 20.

[18] Id. at 5.

heavier penalties.[19]  The legislation for trafficking of fentanyl imposes a penalty of up to 20 years for over 10 grams.[20]   The law, which was signed by Governor Baker on November 24, 2015, went into effect on February 23, 2016.[21]  On April 13, 2018, Governor Baker signed into law a major criminal justice reform bill, which created mandatory minimum sentences for trafficking fentanyl and carfentanil.[22]

However, it is not the sheer quantity of fentanyl on the streets of Massachusetts that is the only problem.  The effect that it has on addicts and the increased risk of opioid-related overdose deaths has devastating consequences.  The Massachusetts Office of the Chief Medical Examiner reports that from October 2013 to October 2014, there were 219 fentanyl-related deaths.[23]  From October 2014 to October 2015, that number spiked to 336 deaths.  This indicates that the appearance of fentanyl, whether taken in its pure form or mixed with other drugs, is trending upwards when it comes to overdose deaths in Massachusetts.[24]  As of 2016, Massachusetts has an age-adjusted heroin overdose rate of 9.5 deaths per 100,000 people and an age-adjusted fentanyl overdose rate of 23.5 deaths per 100,000 people.[25]

---

[19] Press Release, Governor Charlie Baker, Governor Baker Signs Bill to Crack Down on Fentanyl Trafficking. (November 24, 2015) http://www.mass.gov/governor/press-office/press-releases/fy2016/baker-signs-bill-to-crack-down-on-fentanyl-trafficking.html.

[20] Id.

[21] Gintautas Dumcius, *Aimed at Fighting Opioid Crisis, New Massachusetts Law Criminalizing Fentanyl Trafficking Takes Effect*, MASSLIVE, February 22, 2016, http://www.masslive.com/news/index.ssf/2016/02/aimed_at_combating_opioid_cris.html.

[22] Shira Schoenberg, *Gov. Charlie Baker signs landmark Massachusetts criminal justice overhaul, despite concerns*, MASSLIVE, April 13, 2018, https://www.masslive.com/politics/index.ssf/2018/04/gov_charlie_baker_signs_landma.html.

[23] Seelye, supra note 20.

[24] Id.

[25] DEA INTELLIGENCE BRIEF, supra note 28.

### B.     Characteristics of the Defendant

Next, the government turns to MONTEIRO himself.  Several aspects of MONTEIRO's background stand out.  First, MONTEIRO has previously engaged in drug dealing and firearm possession, which are the facts here.  And he engaged in this conduct while on pretrial release from Plymouth Superior Court, in his own neighborhood.  He has demonstrated that he is a dedicated, repeat drug dealer.

Second, the government alleges that MONTEIRO is an active associate of the Perkins Avenue gang in Brockton.  PSR ¶ 78.  As a result, MONTEIRO's criminal conduct here stands squarely at the intersection of guns, drugs and gangs.  It is well known that drug sales, and the corresponding fighting over drug turf, motivates gang violence.  See, e.g., City of Chicago v. Morales, 527 U.S. 41, 99-100 (1999) (Thomas, J., dissenting) (citing research); United States v. Laboy, 351 F.3d 578, 581 (1st Cir. 2003) (court recounted a Lawrence gang's "need to protect [the gang's] 'turf' in Lawrence from anyone else who would try to sell drugs in the area"); United States v. Patrick, 248 F.3d 11, 16 (1st Cir. 2001) (in RICO prosecution of a Boston gang, the court described that only gang members "could sell on the [gang's] 'turf,' and the gang used actual and threatened violence to deter rivals").  MONTEIRO's repeated involvement with guns and drugs created a possibly incendiary combination.

### C.     Conditions of Supervised Release

The government requests a term of thirty six months' supervised release.  Fortunately, MONTEIRO reports generally a good relationship with his parents and good physical health.  PSR ¶¶ 59, 76.  MONTEIRO also reports that he participates in therapy for PTSD, as a result of seeing a friend get shot in a face (likely a tragic consequence of involvement with violence as a youth).  PSR ¶ 77.  To his credit, he has begun treatment in custody.  PSR ¶ 77.  The government

requests that he be evaluated for mental health concerns at his release from confinement and undergo treatment as directed by Probation.  See PSR p. 25.

In addition, despite having graduated from B.B. Russell Alternative School in 2013 and having skills in construction and an OSHA certification, MONTEIRO has never worked.  PSR ¶¶ 82-83, 85.  Unlike many defendants that come before the Court, MONTEIRO does not require vocational services training.  Nevertheless, the government requests that the Court require MONTEIRO to seek or maintain full-time employment (or full-time education) once released.

**IV.  THE GOVERNMENT'S RECOMMENDATION**

For the foregoing reasons, those contained in the PSR and those to be presented at the sentencing hearing, the government requests the following sentence:

- a term of 57 months' imprisonment;
- no fine, because it appears that MONTEIRO cannot pay a fine;
- a term of 36 months' supervised release with the conditions discussed above; and
- a special assessment of $100.

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By:   s/ Timothy E. Moran
TIMOTHY E. MORAN
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

s/ Timothy E. Moran
TIMOTHY E. MORAN

Date: March 25, 2019